# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| 24 HOUR FITNESS USA, INC., a California corporation, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 08 cv 3853 ) |
| v. | ) ) Judge Joan Humphrey Lefkow ) |
| BALLY TOTAL FITNESS HOLDING CORP., a Delaware corporation, and MICHAEL SHEEHAN, an individual, | ) Magistrate Judge Morton Denlow ) ) |
| Defendants. | ) ) ) ) |
| | ) |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND ITS MOTION TO SET DATE FOR <u>PRELIMINARY INJUNCTION HEARING</u>

Plaintiff 24 Hour Fitness USA, Inc. ("24 Hour Fitness" or "Plaintiff"), by and through its attorneys, submits its Reply in Support of Its Motion for Leave to Conduct Expedited Discovery and Its Motion to Set Date for Preliminary Injunction Hearing (collectively "Plaintiff's Motions").

## I.　　INTRODUCTION

This is a very serious matter involving the threatened or actual misappropriation of trade secrets and intentional breaches of fiduciary duty. Plaintiff has requested specific, limited expedited discovery in preparation for a preliminary injunction hearing and that the date for the evidentiary hearing be set as soon as possible after the completion of that specific, limited discovery. Plaintiff has provided to counsel for Defendants a proposed Protective Order

Regarding Confidentiality to govern the pretrial discovery of confidential information, but has not received any response.

Of course, Plaintiff wants to proceed as quickly as possible, but Plaintiff has taken into consideration the practicalities of litigation when making its request. Ensuring adequate time to obtain the requested discovery assists not only the parties, but also this Court, in preventing needless rescheduling of hearings and deadlines and guaranteeing that a sufficient record is established for the court to determine the appropriate bounds for the injunctive relief requested by Plaintiff.

The Court should grant Plaintiff the requested expedited discovery and set the date for a preliminary injunction hearing, as threatened or actual trade secret misappropriation may be enjoined. *See* 765 ILCS 1065/3(a) (2008). An injunction particularly is warranted when there is a "high degree of probability of inevitable and immediate . . . use of . . . trade secrets." *Pepsico v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995). Here, it is inevitable that Defendant Michael Sheehan ("Sheehan") will disclose, and possibly has already disclosed, the proprietary 24 Hour Fitness trade secrets and confidential information to Defendant Bally Total Fitness Holding Corp. ("Bally"). Apparently recognizing this, Defendants instead primarily focus their Opposition on the impact of Plaintiff's previous action filed against Sheehan in the Superior Court of the State of California, County of Contra Costa (hereinafter, the "California Proceeding"), which has no bearing on the current action..[1]

---

[1]    On July 7, 2008, Plaintiff voluntarily, and without prejudice, dismissed the California action, which was filed only against Defendant Sheehan relating to certain contract claims not present here and included an application for a temporary restraining order. Defendants, in support of their Opposition, filed a Request for Judicial Notice of certain judicial records of the Superior Court of the State of California for the County of Contra Costa. While Plaintiff does not object to this Court taking judicial notice of the fact that this litigation and the related filings occurred, as is more fully explained in the Objection filed concurrently with this Reply, Plaintiff does object to this Court taking judicial notice of the "facts" alleged in the filings of the California Proceeding, which Defendant attached as exhibits to its Request.

The remainder of Defendants' Opposition argues that a preliminary injunction hearing should take place after a ten-day expedited discovery period that would include two depositions per side.  Plaintiff's requested schedule, however, is much more realistic; scheduling can be difficult where two large corporations are involved, as is evidenced by difficulties already experienced in scheduling the deposition of Defendant Sheehan for investigating Sheehan's status as a domiciliary of Illinois.  Furthermore, Plaintiff's proposed interrogatories and document requests are tailored specifically to reveal the fact and extent to which Defendant Sheehan has "disclosed" (or threatened to disclose) the trade secrets to Defendant Bally.  This information is absolutely necessary to define the boundaries of the requested injunctive relief as to provide the necessary framework for the evidentiary hearing on the preliminary injunction hearing.

## II.     BACKGROUND

On June 23, 2008, Sheehan, the then-COO of 24 Hour Fitness, suddenly announced his resignation (without notice) from 24 Hour Fitness in order to assume the position of CEO of Bally, 24 Hour Fitness's head-to-head competitor, on July 1, 2008.  All of Sheehan's experience regarding the fitness industry comes from his experience at 24 Hour Fitness.  During Sheehan's eight years at 24 Hour Fitness, he had access to and knowledge of the proprietary 24 Hour Fitness trade secrets and confidential information.  On June 26, 2008, 24 Hour Fitness filed a complaint and an application for a temporary restraining order ("TRO") against Sheehan (the aforementioned "California Proceeding").  No TRO was issued.  Sheehan reported for work as the CEO of Bally, and so, on July 7, 2008, Plaintiff commenced this lawsuit against Bally and Sheehan, in Chicago.  *See* Compl. at Ex. C.  Plaintiff voluntarily, and without prejudice,

dismissed the California proceeding and filed the instant action against both Bally and Sheehan on July 7, 2008, alleging threatened and/or actual misappropriation of trade secrets and breach of fiduciary duty by Sheehan.

## III.    ARGUMENT

### A.    A Preliminary Injunction Hearing Is Necessary to Determine the Extent of Actual Misappropriation Under Illinois Law.

This Court should grant Plaintiff's request to set a date for a preliminary injunction hearing, as the Illinois Trade Secrets Act explicitly provides for preliminary injunctive relief for the threatened or actual misappropriation of trade secrets. *See* 765 ILCS 1065/3(a). The hearing on Plaintiff's application for a temporary restraining order ("TRO") in the California proceeding does not prevent Plaintiff's request for preliminary injunctive relief, and, as the both the factual circumstances and parties have changed, Illinois is both the appropriate forum and the appropriate choice of law under which to evaluate Plaintiff's request for preliminary injunctive relief.

#### 1.    The current circumstances are substantially different from those that existed at the time the California Proceeding was filed.

Defendants' argument that a preliminary injunction hearing is unnecessary as a result of the California Proceeding is hollow. 24 Hour Fitness followed Defendant Sheehan to Illinois, where it filed suit against Sheehan and Bally, and then dismissed the California proceeding without prejudice, as the nucleus and situs of the case is now here, in Illinois. Bally was not a party to the California proceedings, and, most importantly, Sheehan had not yet begun his employment with Bally. Now, however, Sheehan has been working at Bally since July 1, 2008, and actual misappropriation, as well as the inevitable disclosure, of the proprietary 24 Hour Fitness trade secrets and confidential information is at issue. Accordingly, it is necessary for

Plaintiff to conduct expedited discovery and for the Court to set the preliminary injunction hearing as soon as possible after the completion of this discovery, to determine the extent to which Defendants have engaged in misappropriation.

> ### 2. Sheehan, as CEO of Chicago-based Bally, is misappropriating Plaintiff's trade secrets in Illinois.

Illinois is certainly an appropriate forum for this action. Bally maintains its world headquarters in Chicago, and the threatened and/or actual misappropriation of proprietary 24 Hour Fitness trade secrets and confidential information is occurring and will continue to occur at, *inter alia*, those headquarters. Not only is Illinois the forum most convenient for Defendants, Illinois is the state where the threatened and/or actual trade secret misappropriation is occurring, and therefore, Illinois is both the proper forum and the proper choice of law by which to adjudicate Plaintiff's claims.

Defendants cloud this simple issue by suggesting that, even if Illinois is the forum for this suit, California law should apply, as "the parties had agreed in writing that California law controls disputes of this kind . . ." Opp'n at 7. This statement is inaccurate. Plaintiff's trade secret misappropriation claim is a tort claim governed by the Illinois Trade Secrets Act, not by any contract.[2] Furthermore, under Illinois choice of law principles, "a misappropriation claim is subject to either the law of the defendant's principal place of business or the law of the state where the misappropriation took place." *Cognis Corp. v. Chemcentral Corp.,* 430 F. Supp.2d 806, 811 (N.D. Ill. 2006); *see also Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1115 (7th Cir. 1990). Bally's principal place of business, its world headquarters, is in Chicago, and the

---

[2] Even if there were a contract claim at issue based on the employment agreement, there is nothing in the agreement that clearly states that California law applies. Defendants attempt to argue that Paragraph 15 of the employment agreement compels the use of California law, however, this Paragraph is ambiguous at best. *See* Compl. at Ex. A at ¶ 15 ("This Agreement shall be governed by and construed and enforced in accordance with the state applicable to Agreements made and to be performed entirely in the State of California.").

threatened and/or actual misappropriation of 24 Hour Fitness's trade secrets is occurring and will continue to occur at, *inter alia*, those headquarters. Thus, Illinois law applies to 24 Hour Fitness's misappropriation claim. As such, Illinois is the proper venue for this suit, and this Court should apply Illinois law to the dispute.

> **B.    Given the Additional Party and New Issues in This Suit, Expedited Discovery Is Necessary and Plaintiff Requests a Reasonable Amount of Time for That Discovery.**

Plaintiff has proposed a reasonable and realistic discovery schedule designed to allow both for the Court and the parties to schedule and accomplish the discovery necessary for the Court to set and hear the motion for preliminary injunction. Plaintiff has not engaged in "extraordinary delay," and the wisdom of Plaintiff's proposed schedule is highlighted by Defendant Sheehan's unavailability for the short deposition for purposes of jurisdiction. Opp'n at 8-9. Plaintiff served two notices of deposition, and engaged in protracted negotiations over several days, before Defendant Sheehan agreed to produce himself for two hours of deposition on Tuesday, July 22, 2008. Furthermore, the declarations provided in the California proceedings are insufficient to establish Plaintiff's likelihood of success on the merits of its claims--not only is there an additional Defendant, Bally, but the factual circumstances have changed because, at minimum, Sheehan has begun working for Bally. This Court should grant Plaintiff's request for expedited, and reasonable, discovery.

> **1.    Additional issues and parties are now present, and therefore, discovery is necessary.**

The focused, specific, limited discovery that Plaintiff seeks is appropriate and necessary for adjudicating Plaintiff's request for preliminary injunctive relief. The declarations submitted in the California Proceeding do not constitute "extensive evidence" and do not even address Bally's liability. *See* Opp'n at 8. Instead, the only "evidence" submitted by Sheehan was two of

his own declarations and one declaration by Don Kornstein, the Chairman of the Bally Board of Directors. *See* **EXHIBITS 1, 2, and 3.** This hardly can be considered the submission of "extensive evidence."

Furthermore, Plaintiff's request for limited discovery is in no way prevented because Plaintiff did not request discovery in the California proceeding. Opp'n at 2, 8. Again, the California proceeding was dismissed without prejudice. Additionally, the California proceeding lasted only a few business days and was filed only against Sheehan, before he had begun work at Bally. Given that actual misappropriation is now a real issue and that Bally is a now a party, expedited discovery is warranted in order to minimize the continuing irreparable harm to Plaintiff.

### 2. Plaintiff requests a reasonable amount of time for expedited discovery.

Plaintiff's proposed time frame for the limited discovery is reasonable,[3] and Defendants' attempt to re-style Plaintiff's request for expedited discovery as a request for 59 days of discovery is inappropriate. *See* Opp'n at 8. Plaintiff requested simply that Defendants respond to Plaintiff's discovery *within* 14 days of its issuance and that all depositions necessary for the preliminary injunction hearing be completed *within* 45 days after the completion of written discovery; Plaintiff's request that a date be set for a preliminary injunction hearing as soon as possible after this is just the next reasonable step. *See* Mot. at ¶ 5.

Additionally, Defendants' suggestion that the preliminary injunction hearing occur ten (10) days after the start of discovery is unrealistic at best in light of the amount of time required

---

[3]    Even though Plaintiff did not actually request 59 days of expedited discovery, it is not uncommon for courts to grant 60 days for expedited discovery. *See J.S. & J.S. v. South Orange/Maplewood Bd. of Ed.*, Civ. No. 06-3494 (FSH), 2008 WL 820181, at *8 (D. N.J. Mar. 26, 2008) (ordering 60 days of expedited discovery as to one of plaintiff's claims); *Vento & Co. of New York, LLC v. Metromedia Fiber Network, Inc.*, No 97 CIV. 7751(JGK), 1999 WL 147732, at *15 (S.D.N.Y. Mar. 18, 1999) (ordering 60 days of expedited discovery on three discrete issues); *Gallagher v. Mazda Motor of America, Inc.*, 781 F. Supp. 1079, 1086 (E.D. Pa. 1992) (allowing 60 days of expedited discovery for the plaintiff to investigate jurisdictional issues).

by Defendant Sheehan to be available for a short deposition on jurisdictional issues.  It took seven days to produce Sheehan for this limited deposition regarding jurisdiction, even though counsel for Sheehan indicated to the Court that he would be produced the week of the July 15, 2008 hearing.  Tr. of July 15, 2008 Hr'g at 3, ¶ 20-21.  It is a bit disingenuous for Defendants to claim that ten days is sufficient to coordinate and complete all expedited discovery when the presence of one defendant requires 7 days to schedule.  Accordingly, Plaintiff's proposed time frame for the limited discovery is the only realistic plan.

### C.  Plaintiff Only Seeks Narrowly Tailored Discovery for the Preliminary Injunction Hearing.

As previously stated, Plaintiff's narrowly tailored request for discovery is appropriate, and Plaintiff's request does not involve "extraordinary volume." *See* Opp'n at 11.  Instead, Plaintiff seeks only a few depositions and a handful of interrogatories and document requests, specifically tailored to determine the extent of the threatened and/or actual misappropriation of trade secrets by Sheehan and Bally, which is essential to enable this Court to determine the appropriate scope of the injunctive relief available to Plaintiff.

### 1.  Plaintiff only requests depositions limited in number and in time.

Plaintiff requests only six, limited depositions of Bally employees, not the "unlimited" depositions Defendants incorrectly claim.  See Mem. in Supp. of Mot. at 5, requesting "depositions not unlimited in time"; Opp'n at 9, 11.  Defendants further suggestion that Bally will experience a "virtual shutdown" if this Court requires it to produce Sheehan and five other Bally employees for deposition borders on incredible.[4]  Opp'n at 9-10.  Bally, a sophisticated corporation that is no stranger to litigation, surely will not experience a "virtual shutdown" because of six depositions.

---

[4]      In addition to these six individuals, 24 Hour Fitness also seeks the deposition of the executive recruiter used by Bally and Sheehan.

Defendants' unverified memorandum also asserts that many of the persons proposed by Plaintiff "had little, if anything, to do with Plaintiff's [sic] hiring at Bally." Opp'n at 9. Plaintiff named the five Bally employees, officers, and directors who, based on its research appear likely to have had contact with Sheehan and played a role in his hiring. For example, Plaintiff named Michael Feder, who was quoted in Bally's press release regarding Sheehan's hiring, and Don Kornstein, who provided an affidavit in the California Proceeding. *See* **EXHIBIT 3.** Limited discovery, not unverified memoranda, is the appropriate manner in which to determine the facts and witnesses relevant to Sheehan's hiring at Bally.

> ### 2. Plaintiff's interrogatories are narrow and relate to actual misappropriation.

Defendants state that because Plaintiff is "Bally's close competitor" it is inappropriate for Defendants to "identify with specificity the Bally personnel who have directly worked and/or had contact with Sheehan and describe with detail the nature of that work and/or contact." Opp'n at 10. Yet it is *exactly* because Bally is a "close competitor" that Plaintiff asks this question and needs to identify what proprietary 24 Hour Fitness trade secrets and confidential information Bally has acquired through Sheehan's employment. *See Pepsico*, 54 F.3d at 1268. Bally's concerns only serve to emphasize the validity of Plaintiff's claim of inevitable disclosure of its proprietary 24 Hour Fitness trade secrets and confidential information.

Moreover, Defendants' concerns regarding confidentiality and burden are meritless. Plaintiff submitted a proposed Protective Order Regarding Confidentiality to counsel for Defendants last week in an effort to address any confidentiality concerns during discovery. Additionally, there should be little burden in identifying the persons Sheehan has worked with during his employment at Bally, as he has only been employed for a little over two weeks.

**3.  Plaintiff's document requests are limited in scope and are not invasive.**

Finally, the requests for the production of documents submitted by Plaintiff are extremely limited and in no way "invasive."  Opp'n at 10.  Defendants have not provided any substantiation for this conclusory statement, and that some requests to Sheehan are the "mirror image" of those to Bally is typical in a lawsuit with multiple defendants and ensures only that Plaintiff receives the relevant documents from each party; also, of course, counsel for Defendants should find it easier to respond to "mirror" requests, as opposed to two completely separate sets of requests.

Furthermore, these requests are tailored to certain issues, and given that Sheehan has only worked at Bally since July 1, 2008, there should not be that many documents to produce.  For example, the request for Defendants copies of Sheehan's electronic media that contain files created by Sheehan from 2007 to present is tailored specifically to identify the location and contents of electronic media that Plaintiff purchased for Sheehan while he was COO for 24 Hour Fitness and which he did not return upon his resignation from 24 Hour Fitness.  The missing electronic media are capable of holding hundreds, or even thousands, of electronic documents and data, the disclosure of any or all of which could be extremely damaging to Plaintiff.  *See* **EXHIBIT 4** (e-mail regarding the purchase of flash or "thumb" drive).  Thus, Plaintiff has a good-faith basis for seeking such information.  Similarly, Plaintiff's request for Sheehan's phone records is targeted at any misappropriation that may have occurred over the phone.  To the extent Sheehan has privacy concerns related to his telephone records, Plaintiff has proposed a Protective Order Regarding Confidentiality.

Plaintiff is only seeking the limited information necessary to determine the extent to which its trade secrets have been, or are in danger of being, disclosed for the purposes of a preliminary injunction hearing.  Defendants' conclusory allegation that Plaintiff is using these

limited discovery requests as a "weapon" is without merit. *See* Opp'n at 11. Indeed, it is likely that the time the parties have spent on this motion eclipses the time Defendants would have spent answering Plaintiff's narrow discovery requests.

## IV.    CONCLUSION

For the reasons set forth above and those contained in Plaintiff's Memorandum in Support of its Motion for Leave to Conduct Expedited Discovery, Plaintiff 24 Hour Fitness USA, Inc. requests that this Court grant its Motion for Leave to Conduct Expedited Discovery and its Motion for Preliminary Injunction and to Set Date for Preliminary Injunction Hearing, and for such further relief as this Court finds just and proper under the circumstances.

*        *        *

Date:   July 22, 2008                    Respectfully submitted,

                                         24 Hour Fitness USA, Inc.


                                         /s/ R. Mark Halligan
                                         _____

                                         **R. Mark Halligan (IL 6200723)**
                                         mark.halligan@lovells.com
                                         **Deanna R. Swits (IL 6287513)**
                                         deanna.swits@lovells.com
                                         **LOVELLS LLP**
                                         330 N. Wabash Avenue
                                         Suite 1900
                                         Chicago, IL  60611
                                         Tel:  312 832 4400
                                         Fax:  312 832 4444

                                         *Attorneys for Plaintiff 24 Hour Fitness USA, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND ITS MOTION TO SET DATE FOR PRELIMINARY INJUNCTION HEARING** was served on the below counsel by this Court's ECF notification system July 22, 2008:

> Kimball R. Anderson
> Cardelle B. Spangler
> Amanda C. Wiley
> Winston & Strawn LLP
> 35 W. Wacker Drive
> Chicago, Illinois 60601
> kanderson@winston.com
> cspangler@winston.com
> awiley@winston.com
>
> John T. Gabrielides
> NBC Tower, Suite 3600
> 455 North Cityfront Plaza Drive
> Chicago, IL 60611-5599
> jtg@usebrinks.com

> By: /s/ Deanna R. Swits
> *An attorney for Plaintiff 24 Hour Fitness USA, Inc.*

# Exhibit 1

# DECLARATION

I, MICHAEL SHEEHAN, DECLARE:

1.   I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to them

2.   Beginning in 2000 I was employed as Senior Vice President of Operations of 24 Hour Fitness USA, Inc. ("24 Hour"). On June 23, 2008, I resigned my employment with 24 Hour, effective that day.

3.   I have not, at any time, disclosed or disseminated any confidential or proprietary information of 24 Hour to any person outside the company except as required in connection with my work for 24 Hour. Further, when I resigned and left 24 Hour I did not take any confidential or proprietary information relating to the business of 24 Hour with me. I do not intend to disclose or disseminate any confidential or proprietary information of 24 Hour to any person outside the company in the future.

4.   From time to time while I was employed at 24 Hour, I would send work related emails to my personal email account so that I could view them on my home computer. This was usually when I needed to read an email or document that was inconvenient to read on my Blackberry handheld device. I have deleted all such emails and documents which contained any confidential or proprietary information relating to 24 Hour from my home computer and from my personal email account.

5.   Also when I was employed by 24 Hour, I would sometimes take documents relating to 24 Hour with me when I left my office so that I could work at home or when I traveled. I have destroyed all such documents relating to the business of 24 Hour.

6.   To my knowledge, I do not now have, or have access to, any documents containing confidential or proprietary information relating to 24 Hour.

7.   I have not attempted, and I do not intend, to recruit, solicit, induce or encourage any employee of 24 Hour to become an employee of another company. I have not attempted, and I do

1

MICHAEL SHEEHAN DECLARATION

not intend, to recruit, solicit, induce or encourage any independent contractor of 24 Hour to terminate a contracting relationship with 24 Hour.

8.    I have accepted an offer to become employed as Chief Executive Officer of Bally Total Fitness. Inasmuch as I have resigned from 24 Hour, I need the salary from my employment at Bally to support my family. 24 Hour has not discussed any arrangement whereby I could pursue employment at Bally. 24 Hour has not accused me of any illegal conduct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27th day of June, 2008, at *San Ramon* California.

_____
Michael Sheehan

Exhibit 2

## SUPPLEMENTAL DECLARATION OF MICHAEL SHEEHAN

I, MICHAEL SHEEHAN, DECLARE:

1.       I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to them.

2.       Beginning in 2000 I was employed as Senior Vice President of Operations of 24 Hour Fitness USA, Inc. ("24 Hour"). On June 23, 2008, I resigned my employment with 24 Hour, effective that day.

3.       As I noted in my earlier Declaration, I have not, at any time, disclosed or disseminated any confidential or proprietary information of 24 Hour to any person outside the company except as required in connection with my work for 24 Hour. Further, I did not disclose or disseminate any confidential or proprietary information of 24 Hour to any person at Bally, including Bally management and members of Bally's Board of Directors, during any of the interviews that I had with Bally leading up to my offer of employment from Bally, or since I received my offer of employment.

4.       As I noted in my earlier Declaration, when I resigned and left 24 Hour I did not take any confidential or proprietary information relating to the business of 24 Hour with me.

5.       As I noted in my earlier Declaration, I do not intend to disclose or disseminate any confidential or proprietary information of 24 Hour to any person outside the company in the future.

6.       As I noted in my earlier Declaration, from time to time while I was employed at 24 Hour, I would send work related emails to my personal email account so that I could view them on my home computer. This was usually when I needed to read an email or document that was inconvenient to read on my Blackberry handheld device. I have deleted all such emails and documents which contained any confidential or proprietary information relating to 24 Hour from my home computer and from my personal email account. As I noted in my earlier Declaration, when I was employed by 24 Hour, I would sometimes take documents relating to 24 Hour with me when I left my office so that I could work at home or when I traveled. I have destroyed all such documents relating to the business of 24 Hour Fitness.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1
Supplemental Declaration of Michael Sheehan

7.    I understand that William Donahue has signed a Declaration that states that to the extent I emailed to myself "work related emails to my personal email account," or took documents related to 24 Hour Fitness when I left the office, so that I could work from home, that these actions violated "24 Hour Fitness' confidential and proprietary information and trade secrets policies." I do not know which policies Mr. Donahue is referring to. I was not aware of any policy that prohibited an executive from emailing information to his/her home, or taking information home or while traveling to work on company business outside of work. In fact, I was assigned a laptop, and could have taken my laptop home with me at any time, or logged onto 24 Hour Fitness' system remotely from my home. Many executives routinely took their laptops home with them or on travel to perform work when they were outside the office. I chose instead to email information to my self or take documents home because it was more convenient for me than carrying my laptop. In fact, it was common practice for other executives to do the same, to stay ahead of their busy work schedules. No one ever told me that my actions violated any company policy. .

8.    I understand that Angela Reed has also executed a Declaration, stating that I regularly asked her to download on Fridays all materials on which I had been working on during the week, to a portable hard drive. I asked her to download information I maintained on my laptop's hard drive to a portable hard drive to back up the laptop's hard drive, in case the lap top crashed. This was merely a precaution to protect the information. Indeed, I rarely took this portable hard drive out of the office, just as I rarely took my lap top out of the office. In fact, I had not taken this portable hard drive out of my office at 24 Hour for at least a month prior to my termination. I last saw the portable hard drive on my last day of employment at 24 Hour; it was sitting in my office next to my computer. I do not have this hard drive.

9.    Ms. Read's Declaration refers to a 500 gigabyte portable hard drive that was not among the inventory of returned item. She might be referring to a portable hard drive that I purchased new. I had the box containing this hard drive in my office, but it was never opened in the corporate office to the best of my knowledge. I gave this hard drive to employee Randy Drake, who took the hard drive home with him, to download his personal music files. To the best of my knowledge, nothing other than personal music files were loaded on this hard drive. These files,

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

however, do not belong to 24 Hour Fitness; and to the best of my knowledge, do not contain any confidential or proprietary information of 24 Hour Fitness. Rather these files contain personal music files.

10.     Ms. Read also notes that in May I asked her to assemble certain Profit & Loss statements, in hard copy, and place such information in binders. This was part of the information that I would routinely request be gathered to assist me in my position. I would use this information when I visited Clubs. However, I have never used the information Ms. Read prepared in May 2008. In fact, I did not ever open any of these binders and look at the information. The binders that Ms. Read compiled were on the shelf in my office at 24 Hour Fitness the day I terminated my employment. I have not seen these binders since, and do not have these binders or any copies of these binders in my possession.

11.     Ms. Read also states that I had a flash drive in my office. I no longer have this flash drive. I had not used this flash drive in the several weeks before my termination. I assume that this flash drive is my office at 24 Hour Fitness. I did not see it the day I terminated my employment, and I do not have this flash drive, or any copies of this flash drive in my possession. I have not seen this flash drive since before my termination. Executives at 24 Hour Fitness had flash drives and would routinely take their laptops and/or their flash drives home with them to work in the evenings or over the weekend.

12.     As I noted in my earlier Declaration, to my knowledge, I do not now have, or have access to, any documents containing confidential or proprietary information relating to 24 Hour.

13.     Throughout my employment with 24 Hour, I lived and worked in California.

14.     There are more than two hundred 24 Hour Fitness Centers in California.

15.     Information contained on 24 Hour Fitness' public website includes pricing for both personal training and members, as well as a listing of clubs, which are not yet open, but which are opening in the future.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1      I declare under penalty of perjury under the laws of the State of California that the foregoing

2  is true and correct.

3      Executed this 30th day of June, 2008, at _San Ramon_, California.



Michael Sheehan

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

4

Supplemental Declaration of Michael Sheehan

Exhibit 3

## DECLARATION

I, DON KORNSTEIN, DECLARE:

    1.    I am the Chairman of the Board of Directors of Bally Total Fitness Holding Corporation ("Bally"). I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to them.

    2.    Attached hereto as Exhibit A is a true and correct letter I received on June 24, 2008, from Carl C. Liebert, III, Chief Executive Officer of 24 Hour Fitness USA, Inc. ("24 Hour"). To my knowledge, 24 Hour has not accused Mr. Sheehan of engaging in any unlawful conduct. Per the attached letter, 24 Hour only has contended that Mr. Sheehan's employment with Bally would violate provisions of his employment contract purporting to prevent him from working for a competitor of 24 Hour.

    I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed this 27th day of June, 2008, at New York, New York.

_____
Don Kornstein

MICHAEL SHEEHAN DECLARATION

**EXHIBIT A**

 

June 24, 2008

Don Kornstein
Interim Chairman and Chief Restructuring Officer
Bally Total Fitness Corporation
8700 West Bryn Mawr Avenue Second Floor
Chicago, IL 60631

Dear Don:

Yesterday, Mike Sheehan informed me he was resigning his position as Chief Operating Officer of 24 Hour Fitness to become Chief Executive Officer of Bally Total Fitness. I'm writing to convey my extreme disappointment that Mike and Bally have collectively decided upon this course of action and to give you fair notice that our Company will hold both Mike and Bally legally accountable for their conduct.

As I can only assume you know, Mike is currently subject to significant non-compete and confidentiality obligations that preclude him for working with Bally. Bally is a direct competitor of our Company, and Mike's non-compete is governed by various laws, including the California Business and Professions Code. In addition, Mike is also contractually precluded from using in any way for the benefit of Bally the confidential and proprietary information he has learned during his tenure with 24 Hour Fitness. As a practical matter, Mike will be unable to work in any meaningful way as Bally's CEO without using such confidential information.

Given the circumstances under which Mike has announced his intention to join Bally, Bally likewise faces its own legal liability if it proceeds to hire Mike with knowledge of these restrictions. Bally will be subject to liability for its intentional interference with contract for inducing Mike to breach his contractual commitment to our Company, as well as liability for a violation of the California Business and Professions Code, California's unfair competition law. A finding of liability on such a claim can result in the award of damages, injunctive relief, disgorgement of profits and attorneys fees and costs.

I am hopeful that Bally will suspend its efforts to hire Mike. Should you continue to proceed, however, please know that our Company will take all necessary steps to protect its interests, including legal action against Bally as well as against Mike. I would urge you to reconsider this legally imprudent act.

Sincerely yours,

Carl C. Liebert, III

carl c. liebert, III
chief executive officer



: 925 543 3370
: 925 543 3360

12647 alcosta blvd  suite 500
san ramon, ca 94583

# Exhibit 4

**From:** Mike Hardesty
**Sent:** Monday, May 19, 2008 3:19 PM
**To:** Tiffany Hughes
**Subject:** RE: Order: thumb drive for Mike Sheehan

order#344826
ETA 3-4 business days.

Mike Hardesty
IT Buyer
24 Hour Fitness
(760) 918-4464
mhardesty@24hourfit.com

**From:** Tiffany Hughes
**Sent:** Monday, May 19, 2008 3:07 PM
**To:** Mike Hardesty
**Subject:** Order: thumb drive for Mike Sheehan

*could you please order 1 SanDisk curser*
*ship: Tiffany @ tsc*
*dept: 90555*

*thanks*

**From:** Angela Read
**Sent:** Monday, May 19, 2008 3:03 PM
**To:** Tiffany Hughes
**Subject:** RE: thumb drive

Perfect, thanks,

**Angela Read**
Executive Assistant to Mike Sheehan, COO
24 Hour Fitness Worldwide
12647 Alcosta Blvd.
San Ramon, CA  94583
Direct:  925.543.3211
Fax: 925.543.3219
aread@24hourfit.com

**From:** Tiffany Hughes
**Sent:** Monday, May 19, 2008 3:03 PM

**To:** Angela Read
**Subject:** RE: thumb drive

*this is one I've gotten for Carl. it is 4gb. ok to order this one?*

**From:** Angela Read
**Sent:** Monday, May 19, 2008 3:00 PM
**To:** Tiffany Hughes
**Subject:** RE: thumb drive

Yeah.  Thanks,


**Angela Read**
Executive Assistant to Mike Sheehan, COO
24 Hour Fitness Worldwide
12647 Alcosta Blvd.
San Ramon, CA  94583

Direct:  925.543.3211
Fax: 925.543.3219
aread@24hourfit.com

---

**From:** Tiffany Hughes
**Sent:** Monday, May 19, 2008 2:59 PM
**To:** Angela Read
**Subject:** RE: thumb drive

*to keep no. does he need me to order him one?*

---

**From:** Angela Read
**Sent:** Monday, May 19, 2008 2:47 PM
**To:** Tiffany Hughes
**Subject:** thumb drive

Hey – do you have like a 2 gig thumb drive that I can give to Mike?


**Angela Read**
Executive Assistant to Mike Sheehan, COO
24 Hour Fitness Worldwide
12647 Alcosta Blvd.
San Ramon, CA  94583
Direct:  925.543.3211
Fax: 925.543.3219
aread@24hourfit.com