IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 24 HOUR FITNESS USA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>BALLY TOTAL FITNESS HOLDING CORP., a Delaware corporation, and MICHAEL SHEEHAN, an individual,<br><br>Defendants. | No. 08 CV 3853<br><br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiff, 24 Hour Fitness USA, Inc. ("24 Hour Fitness" or "24 Hour USA"), has brought this action against defendants, Bally Total Fitness Holding Corp. ("Bally") and Michael Sheehan (collectively, "defendants"), alleging threatened or actual misappropriation of trade secrets pursuant to the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1 *et seq.*, and breach of fiduciary duty. These allegations arise out of Sheehan's June 23, 2008 resignation as Chief Operating Officer (COO) of 24 Hour Fitness and Bally's announcement the next day that it was hiring Sheehan to be its new Chief Executive Officer (CEO). Before the court is defendants' motion to dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Bally and Mr. Sheehan contend that 24 Hour Fitness has failed to establish diversity of citizenship as required by 28 U.S.C. § 1332. For the following reasons, defendants' motion [#30] is granted.

## LEGAL STANDARD

A court may entertain a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) at any time. Fed. R. Civ. P. 12(h)(3); *see also Cook* v. *Winfrey*, 141 F.3d 322, 326 n.3 (7th Cir. 1998). Plaintiff alleges that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, which applies to suits between parties who are citizens of different states. 28 U.S.C. § 1332(a)(1); *Nuclear Engineering Co.* v. *Scott*, 660 F.2d 241, 250 (7th Cir. 1981). When suing multiple defendants in a diversity action, a plaintiff "must meet the requirements of the diversity statute for each defendant or face dismissal." *Newman-Green. Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826, 829, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989) (citing *Strawbridge* v. *Curtiss*, 3 Cranch 267, 2 L. Ed. 435 (1806)). This jurisdictional burden rests with the party alleging diversity, which must support its allegations "by competent proof." *Thomson* v. *Gaskill*, 315 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 951 (1942); *see also Chase* v. *Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) ("[T]he party seeking to invoke federal diversity jurisdiction . . . bears the burden of demonstrating that the complete diversity . . . requirement[] [is] met."). The Seventh Circuit has interpreted this requirement as a preponderance of the evidence standard. *See NLFC, Inc.* v. *Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995); *Gould* v. *Artisoft, Inc.* 1 F.3d 544, 547 (7th Cir. 1993); *Shaw* v. *Dow Brands, Inc.*, 994 F.2d 364, 366 n.2 (7th Cir. 1993).

**BACKGROUND**

Michael Sheehan was an executive at 24 Hour Fitness, a California corporation with its principal place of business in California, for nearly eight years, eventually rising to the title of COO. His tenure with the company came to an end on June 23, 2008, however, after he informed his colleagues that he was resigning, effective immediately, in order to accept the CEO

position at Bally. Bally, like 24 Hour Fitness, operates a chain of fitness centers and, according to the amended complaint, is a "direct, head-to-head competitor of 24 Hour Fitness." Am. Compl. ¶ 17. 24 Hour Fitness alleges that in hiring Mr. Sheehan, Bally not only took on a new CEO but also gained access to 24 Hour Fitness's proprietary trade secrets and confidential information.

Accordingly, on June 27, four days after Mr. Sheehan's departure from 24 Hour Fitness and three days after Bally issued a press release announcing his hire, 24 Hour Fitness filed a lawsuit and an *ex parte* application for a temporary restraining order in the Contra Costa County, California Superior Court. Those proceedings had a markedly similar, though not identical, character to the present action. To begin with, the complaint in the California case named an additional plaintiff, 24 Hour Fitness Worldwide, Inc. ("24 Hour Worldwide"), the corporate parent of 24 Hour USA, the sole plaintiff (at present) in this case. Also, the California complaint named as defendants "Michael Sheehan and Does 1-100, inclusive," but not Bally. In addition, the complaint alleged five counts, two of which (misappropriation of trade secrets and unfair business practices) were premised on California statutes, and two of which (breach of employment agreement and breach of shareholder agreement) arose exclusively from Sheehan's contractual arrangements with 24 Hour USA and 24 Hour Worldwide; the fifth count merely asserted a general claim for injunctive relief, incorporating by reference the previous allegations in the complaint. Finally, and most apparently, 24 Hour USA and 24 Hour Worldwide filed the previous action in a California forum, premised it on California statutory and common law causes of action, and did not reference or rely on either Illinois law or 28 U.S.C. § 1332.

The suit's presence in California, however, was fleeting. On June 30, the California

court denied the plaintiffs' application for a temporary restraining order and set a July 15 hearing date for their preliminary injunction request. A week later, on July 7, the plaintiffs voluntarily dismissed the California case without prejudice. On the same day, 24 Hour Fitness USA and 24 Hour Fitness Worldwide filed the present two-count action against both Mr. Sheehan and Bally in this court—apparently overlooking the lack of diversity (though it was apparent on the face of their complaint) in that both 24 Hour Fitness Worldwide and Bally were incorporated in the state of Delaware. A day later, 24 Hour Fitness USA filed an amended complaint in which 24 Hour Fitness Worldwide was not named as a plaintiff and, consistent with the plaintiff's now more-plausible reliance on 28 U.S.C. § 1332, Mr. Sheehan was, for the first time, alleged to be a citizen of Illinois.[1]

In the meantime, Mr. Sheehan prepared to take the helm at Bally. On June 20, three days prior to notifying 24 Hour Fitness that he was leaving the company, Mr. Sheehan signed an employment agreement with Bally in which he agreed to move his "permanent residence" to the Chicago area by July 30, 2008.[2] Pl.'s Resp., Ex. B, at 3. The contract also rendered him "eligible for . . . relocation benefits," including paid trips for himself and his wife "for home visits and/or house hunting trips in the Chicago area" and 90 days of corporate housing during the time period before he "relocated [his] household to a local residence." *Id.* Shortly after announcing his resignation from 24 Hour Fitness, Sheehan began flying to Chicago—traveling

---

[1] Although the original complaint in this case alleged that "[o]n information and belief, Defendant Sheehan is a *resident* of Illinois," it did not allege that he was a citizen of Illinois. Compl. ¶ 4 (emphasis added).

[2] In a declaration attached to defendants' motion, Sheehan asserts that there was an oral modification to this agreement prior to July 1 by an authorized member of Bally's board of directors, absolving Sheehan of this obligation until after this litigation is terminated.

alone on each trip—to commence employment with Bally and stayed at a local hotel for three nights before returning to California and his family. He continued this practice, traveling alone to Chicago during the week (staying at the same hotel during each trip) and returning to his family and his unsold California home on weekends, at least through his July 22 deposition. Also, on July 23, Sheehan and his wife put their San Ramon, California house up for sale.[3]

On July 24, defendants filed this motion to dismiss for lack of subject matter jurisdiction. They argue that Sheehan is, like 24 Hour Fitness USA, a California citizen for diversity purposes. Defendants also argue, alternatively, that 24 Hour Fitness Worldwide is, pursuant to Rule 19 of the Federal Rules of Civil Procedure, a necessary party to this litigation and that the suit must therefore be dismissed due to the shared Delaware citizenship of 24 Hour Fitness Worldwide and Bally.

## DISCUSSION

In determining citizenship for purposes of diversity jurisdiction, courts look to the operative facts at the time the action was filed. *See Smith* v. *Sperling*, 354 U.S. 91, 93 n.1, 77 S. Ct. 1112, 1 L. Ed. 2d 1205 (1957) ("It is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought . . . .") (internal quotation marks and citations omitted); *Johnson* v. *Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) ("Whether § 1332 supplies subject-matter jurisdiction must be ascertained at the outset; events after the suit begins do not affect the diversity jurisdiction."). "[W]here evidence pertinent to subject matter

---

[3] Mr. Sheehan asserts that this decision was prompted by his desire to return with his family to Southern California, his former home region, for he only moved from there to San Ramon due to the latter's proximity to the Northern California corporate offices of 24 Hour Fitness. Supp. Decl. of Michael Sheehan at 2. Sheehan further asserts that he never made arrangements to relocate his residence to Chicago or anywhere else in Illinois and that "[a]s of the date of the modification of [his] agreement with Bally (i.e., prior to July 1), [he] abandoned [his] intention of establishing a permanent residence in Chicago." Sheehan Supp. Decl. at 1. 24 Hour Fitness disputes the veracity of these assertions.

5

jurisdiction has been submitted . . . 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (quoting *United Transp. Union* v. *Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)). Once a defendant proffers evidence that casts doubt on a court's subject matter jurisdiction, "the presumption of correctness that we accord to a complaint's allegations falls away." *Id.* at 856; *see also Commodity Trend Serv., Inc.* v. *Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court is not bound to accept the truth of the allegations in the complaint.").

The Seventh Circuit has established that "[i]n federal law citizenship means domicile, not residence," *America's Best Inns, Inc.* v. *Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992) (per curiam), and "domicile is the place one intends to remain," *Dakuras* v. *Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). In determining an individual's domicile, courts looks both to her physical presence in a state and her intent to remain there. *Texas* v. *Florida*, 306 U.S. 398, 424, 59 S. Ct. 563, 83 L. Ed. 817 (1939); *Denlinger* v. *Brennan*, 87 F.3d 214, 216 (7th Cir. 1996). Intent for diversity purposes has been described as "a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct." *Sadat* v. *Mertes*, 615 F.2d 1176, 1181 (7th Cir. 1980) (internal quotation marks omitted). "[S]tatements of intent are entitled to little weight when in conflict with the facts." *Id.* (internal quotation marks and citations omitted). While no individual factor is dispositive in determining domicile, courts rely on a variety of factors in their analyses, including current residence, location of belongings and personal property, voter registration, driver's license and vehicle registrations, place of

employment, presence of family members, and extent of social involvement in the surrounding community, among others. *See, e.g.*, *Sadat*, 615 F.2d at 1181 & n.5 ("A party's voting practice . . . is only one of the factors considered in determining that person's domicile. No single factor is conclusive."); *Gravdahl* v. *Conwell*, No. 00 C 0579, 2002 WL 398599, at *1 (N.D. Ill. Mar. 14, 2002). Furthermore, "it is well-established that in ascertaining intent to remain for purposes of establishing domicile a party's entire course of conduct may be taken into account. It is not enough to simply establish physical presence, but in order to turn residence in fact into a domicile in law the party must show, by some objective act, his intention to maintain the residency indefinitely." *Perry* v. *Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993) (internal citations omitted).

Courts have created a presumption that favors an individual's old, established domicile over a newly-acquired one. *See, e.g.*, *Lew* v. *Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (citing *Holmes* v. *Sopuch*, 639 F.2d 431, 434 (8th Cir.1981); *Hawes* v. *Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979); *Janzen* v. *Goos*, 302 F.2d 421, 425 (8th Cir. 1962); *Stine* v. *Moore*, 213 F.2d 446, 447 (5th Cir. 1954)); *Zafar* v. *Matlock*, No. 92 C 5807, 1992 WL 370171, at *1 (N.D. Ill. Dec. 2, 1992). Thus,

> [a] domicile once established . . . continues until a new domicile is acquired. The four elements of change are: (1) physical abandonment of the first domicile, (2) [i]ntention not to return, (3) physical presence in the new domicile, and (4) intent to make that his domicile; and in order to effect a change of domicile the old domicile must be abandoned, without an intention to return to it, and a new domicile acquired in another jurisdiction with the intention of making it a permanent home.

*Koerber* v. *Apollo Golf, Inc.*, No. 93 C 711, 1993 WL 39630, at *1 (N.D. Ill. Feb. 16, 1993) (Shadur, J.) (citations omitted).

With these teachings in mind, the court turns to Mr. Sheehan's manifested conduct in

7

order to determine whether the preponderance of the evidence shows that he had changed his domicile from California to Illinois during the time period surrounding July 7, 2008—the date this action was filed in federal court. There is no question that in the months and years prior to June 2008, Sheehan was a domiciliary of California, where he has resided for approximately 13 years, owns a house in which he lives with his family, is registered to vote, has a California drivers license, and has his utilities and personal services, such as phone service and mail delivery. 24 Hour Fitness's contention that Sheehan had changed his domicile to Illinois on or before July 7, 2008 relies primarily on the facts that (1) Sheehan was present in Illinois on the date the complaint was filed, (2) his written employment agreement with Bally, dated June 20, 2008, obligates him to establish a permanent residence in the Chicago area by no later than July 30, 2008, and (3) he put his San Ramon, California home on the market on July 23, 2008.

The Seventh Circuit's decision in *Galva Foundry Co.* v. *Heiden*, 924 F.2d 729 (7th Cir. 1991), provides an effective starting point for the court's analysis. In that case, the court acknowledged the difficulty of pinning down a financially-advantaged individual's domicile in "this age of second homes and speedy transportation" and held that the defendant, Ray Heiden, remained a citizen of Illinois despite the plaintiff's claim that Heiden had taken proper steps to change his domicile to Florida. *Id.* at 730. Heiden had lived and worked in Peoria, Illinois, "all his life until the events giving rise to th[e] suit." *Id.* He had also owned a second residence in Florida, which he and his wife used as a vacation home, for over twenty years prior to commencement of the litigation. *Id.* After he retired, Heiden had "registered to vote in Florida, . . . taken out a Florida driver's license, . . . stated in an application for a Florida tax exemption that he had become (as of that year) a permanent resident of Florida, and . . . listed his Florida

8

address as his permanent address on both his federal and Illinois income tax returns." *Id.* The court concluded that these actions were undertaken for tax-related reasons and did not suffice to change Heiden's domicile for federal diversity purposes. *Id.* Rather, the court found that Heiden, who maintained his Illinois household and continued participating in the social and religious life of his Illinois community, "intended no change in the manner or style of his life, the *center of gravity* of which was and remains in" Illinois. *Id.* (emphasis added).

Central to this "center of gravity" analysis is the location of an individual's family—particularly his spouse and children. A number of courts have relied heavily on this factor in determining where a party is domiciled for diversity purposes. *See, e.g.*, *Nat'l Artists Mgmt. Co., Inc.* v. *Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) ("[T]he residence of a married person's spouse and children (if the couple has not separated) is given considerable weight."); *United States* v. *Scott*, 472 F. Supp. 1073, 1079 (N.D. Ill. 1979) ("[T]he residence of a spouse . . . is a highly persuasive indication of the place intended as a permanent home."); *see also* Restatement (Second) of Conflict of Laws, Ch. 2, Topic 2, Special Note on Evidence for Establishment of a Domicil of Choice (1971) ("Since a man's home will usually be with his family, the place where his wife and children dwell is likely to be his domicil . . . [s]o when he leaves his family behind and goes to another place, his domicil presumably remains unchanged."). One such example is found in *Viacom, Inc.* v. *Flynn*, No. 96 C 3131, 1997 WL 97697 (N.D. Ill. Feb. 27, 1997), where a defendant who had been a resident of Illinois for over forty years before relocating to Florida was found to be domiciled in the latter state, despite owning a $2 million dollar condominium in Chicago, maintaining his business's headquarters in Chicago, spending approximately six to eight times more days in Illinois than in Florida per year

during the three years preceding the litigation, and participating in a wide variety of social and community activities in Chicago. *Id.* at *3–6. The court based its reasoning in part on the fact that the defendant's wife continued to reside in Florida while he was in Illinois, that they and their children consistently celebrated holidays together in Florida, and that their children had attended high school in Florida and returned there while on vacations from college. *Id.* at *5–6. The court thus concluded that at a certain point prior to the filing of the complaint, the defendant "did change the center of his life to Florida." *Id.* at *6.

In its response to defendants' motion to dismiss, 24 Hour Fitness relies, in part, on *Sadat* v. *Mertes*, 615 F.2d 1176 (7th Cir. 1980) (per curiam), another decision in which the court found the location of an individual's family to be a significant factor in determining his domicile for diversity purposes. *Id.* at 1181. 24 Hour Fitness specifically references the Seventh Circuit's statement that "[t]o establish a domicile of choice a person generally must be physically present at the location and intend to make that place his home *for the time at least*." *Id.* at 1180 (emphasis added). It appears that 24 Hour Fitness perceived the phrase "for the time at least" to support its assertion that Sheehan is a domiciliary of Illinois. Regardless of any potential ambiguity created by that phrase, however, the Seventh Circuit has more recently and authoritatively confirmed that an individual must intend to remain in his new domicile "indefinitely" in order to be recognized as a citizen of his new state for purposes of diversity jurisdiction. *Perry* v. *Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993); *see also Castellon-Contreras* v. *I.N.S.*, 45 F.3d 149, 153 (7th Cir. 1995) ("Domicile ordinarily is understood to mean physical presence and the intent to remain somewhere indefinitely.").

Furthermore, the court's elucidation in *Sadat* of how and why the plaintiff's multiple relocations constituted multiple changes in domicile proves far more favorable to defendants' position than that of 24 Hour Fitness. In determining whether the plaintiff was domiciled abroad, and thus outside the statutory reach of 28 U.S.C. § 1332(a)(1), the Seventh Circuit first considered the plaintiff's 1973 move from Pennsylvania to Lebanon, concluding that he "effected a change in his domicile" at that time because he "moved his belongings, his family, and his business to Lebanon." *Sadat*, 615 F.2d at 1181. Then, in 1975, he and his family moved again to Egypt, where he had been born and raised and where he stayed through 1976, the year he filed his complaint. *Id.* The Seventh Circuit held that it was proper to consider Egypt his new domicile for diversity purposes because he owned a house in Cairo where he and his family lived and where he stored his belongings, he secured an Egyptian driver's license, and he enrolled his children in Egyptian schools. *Id.*

24 Hour Fitness also relies on *Midwest Transit, Inc.* v. *Hicks*, 79 Fed. Appx. 205 (7th Cir. 2003), where the Seventh Circuit vacated and remanded a district court's decision to dismiss the defendant's counterclaims for lack of subject matter jurisdiction. *Id.* at 208–09. In that case, the district court had ruled that the defendant was a citizen of Illinois for diversity purposes, but had done so in so cursory a fashion that the appellate court was unable to review the lower court's decision without greater exposition of the central issues. *Id.* The district court had presumably premised its holding on the basis of, among other things, the defendant's ownership of one vehicle, two homes, several business interests, and hundreds of acres of developed and undeveloped real estate in Illinois, as well as his alleged regular participation in Illinois-based social activities and maintenance of a checking account and doctor in Illinois. *Id.* at 207. The

11

defendant countered that he should be considered a Florida citizen for diversity purposes on the basis of, among other things, his owning a home in Florida, his purchase of a home for his ex-wife and three minor children in Florida, his always returning to Florida whenever his Illinois business interests came to a conclusion, and his having left Illinois for Florida "with no plans to return" after his conflicts with the plaintiff began. *Id.* The defendant's declaration of his intent to reside in Florida indefinitely (which the district court failed to address) compelled the appellate court to remand the case for an evidentiary hearing, focused particularly on the defendant's credibility, to determine his domicile. In so holding, the Seventh Circuit dismissed plaintiff's contention that the defendant only left Illinois to avoid service of process and create diversity jurisdiction, explaining that the defendant's "motive in moving . . . is irrelevant as long as his intent to change his domicile is 'bona fide.'" *Id.* at 209.

*Sadat*, *Midwest Transit*, and *Viacom* are each consistent with the Seventh Circuit's suggestion in *Galva Foundry* that one's domicile exists wherever one's "center of gravity" happens to be. 924 F.2d at 730. In Sheehan's case, that place continues to be California. Unlike the defendants in *Galva Foundry*, *Midwest Transit*, and *Viacom* and the plaintiff in *Sadat*, Sheehan neither owns nor maintains a separate residence in the state in which 24 Hour Fitness alleges he is domiciled. His belongings, along with his family, remain in California—thus excluding from consideration two of the *Sadat* court's central rationales for finding that the plaintiff in that case had changed his domicile. Sheehan also has not changed state-citizenship indicia such as his driver's license, voter registration card, or bank accounts.

Likewise, there is no evidence that Sheehan integrated himself into the Illinois community in such a way as to change "the manner or style of his life." Indeed, the evidence

presented by the parties suggests that his life—sleeping in a hotel on every visit and returning to his family in California at the end of each work week—would look similar regardless of whether Bally's headquarters were in Chicago or Cape Cod, Rochester or Reno. Furthermore, Sheehan made his trips to Chicago alone, leaving his wife and family behind in their California home. A similar arrangement in *Viacom*, where the defendant's spouse and children had relocated to Florida, was a significant factor in that court's holding that, despite his decidedly more longstanding and substantial presence in Illinois, he had changed his domicile to Florida.

In its response to defendants' motion to dismiss, 24 Hour Fitness relies perhaps most heavily on the fact that Mr. Sheehan signed an employment agreement with Bally on June 20, 2008, in which he agreed to move his permanent residence to Chicago by July 30, 2008. Plaintiff also points out that the contract provides that Sheehan will be eligible for certain relocation benefits, including payment for temporary housing expenses and several paid round-trips for himself and his wife for the purposes of "home visits and/or house hunting trips in the Chicago area." Pl.'s Resp., Ex. B, at 3. Finally, plaintiff emphasizes that on July 23, 2008, the Sheehans put their Northern California home on the market, though that act occurred well after 24 Fitness filed its complaint in this action.

Whether considered individually or cumulatively, however, these facts offer only limited support for 24 Hour Fitness's assertion that at or before the time it filed its complaint, Sheehan had decided to make Illinois his home and remain there indefinitely. Rather, taking into account his "entire course of conduct," *Perry*, 16 F.3d at 140, and the Seventh Circuit's observation that "domicile is the place one intends to remain," *Dakuras*, 312 F.3d at 258, it is clear that Sheehan remains a citizen of California. Mr. Sheehan's physical presence in Chicago has been marked by

solitude and a proximity to three structures—O'Hare International Airport, Bally's headquarters, and the Renaissance O'Hare Hotel. Although he signed a contract requiring that he establish a permanent residence in Chicago by the end of July, there is no evidence that he contacted any real estate agents or made any move to stay anywhere other than that hotel. It is also noteworthy that the Sheehans apparently have yet to take advantage of the relocation benefits for which Sheehan's employment agreement rendered them eligible.

Moreover, as the Seventh Circuit explained in *Galva Foundry*, because "diversity is a jurisdictional requirement, which a defendant cannot . . . waive," citizenship for diversity purposes "cannot be acquired by estoppel." 924 F.2d at 730–31. The language in Sheehan's employment agreement with Bally is, thus, far from dispositive. In other words, even if Sheehan's employment agreement with Bally had unequivocally obligated him to change his *domicile* to Illinois, such a provision would not necessarily transform him into a citizen of Illinois for the purposes of diversity jurisdiction. In any event, the employment agreement did not go so far, obligating Sheehan merely to establish a permanent residence in the Chicago area by July 30 (though he asserts that there was an oral modification to the agreement prior to July 1, absolving him of that obligation until after this litigation is terminated). But even if Sheehan had established such a *permanent* residence in Chicago prior to the commencement of this lawsuit—and there is no evidence that he did so—the question would remain whether such an abode was his *primary* residence, whether he intended to remain their indefinitely, and whether he had abandoned, with no intention of returning, his previously established domicile of California.

In sum, the limited facts that 24 Hour Fitness has offered to support its contention that Sheehan is a citizen of Illinois—most prominently, (1) the provision of his employment agreement requiring him to establish a permanent residence in Chicago, and (2) his putting his San Ramon, California home on the market (an act that took place after this suit was filed)—are far outweighed by the numerous factors, as recited above, indicating that California remained his domicile at the time this suit was filed. This conclusion is even more pronounced in light of the presumption that favors an individual's old, established domicile over a newly-acquired residence. *See, e.g.*, *Lew*, 797 F.2d at 751 (collecting cases); *Zafar*, 1992 WL 370171, at *1.

The court thus finds that defendant Sheehan, like plaintiff 24 Hour Fitness, is a citizen of California for purposes of diversity jurisdiction and, consequently, that the parties are not completely diverse. The court, therefore, lacks subject matter jurisdiction over this action.[4]

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss the plaintiff's complaint [#30] is granted. The case is dismissed for lack of subject matter jurisdiction.[5]

---

[4] Having found that complete diversity is lacking, the court need not address defendants' alternative argument in support of their motion to dismiss—that 24 Hour Fitness Worldwide is, pursuant to Rule 19 of the Federal Rules of Civil Procedure, a necessary party to this litigation and that the suit must therefore be dismissed due to the shared Delaware citizenship of 24 Hour Fitness Worldwide and Bally.

[5] 24 Hour Fitness has filed a motion for leave to file a second amended complaint, seeking to add a third count against Sheehan for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* The Supreme Court has established, however, that "[q]uestions of jurisdiction, of course, should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Vermont Agency of Natural Res.* v. *United States ex rel. Stevens*, 529 U.S. 765, 778–90, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000) (internal quotation marks and citations omitted); *see also Morongo Band of Mission Indians* v. *California State Bd. of*

Dated: October 21, 2008  Enter: _/s/ Joan H. Lefkow_
JOAN HUMPHREY LEFKOW
United States District Judge

---

*Equalization*, 858 F.2d 1376, 1380–81 & n.2 (9th Cir. 1988) ("[A] district court is powerless to grant leave to amend when it lacks jurisdiction over the original complaint."); *Moore* v. *Leo Burnett Worldwide, Inc.*, No. 07-CV-13007, 2007 WL 2639236, at *1 (E.D. Mich. Sept. 4, 2007) ("This lawsuit was commenced as a diversity action, and jurisdiction is to be assessed at the time-of-filing. The court lacks subject matter jurisdiction to entertain [plaintiff]'s request to add federal ADEA claims.") (citations omitted). As plaintiff asserts in its response to defendants' motion to dismiss, "[t]he Amended Complaint, filed July 8, 2008, is the only operable complaint in this action." Pl.'s Resp. (to Defs.' Mot. to Dismiss), at 2 n.1. Thus, having determined that it lacks subject matter jurisdiction over the amended complaint (and, likewise, the original complaint, which was jurisdictionally deficient on its face), the court must dismiss this action.

In its reply, 24 Fitness cites cases in which courts "have granted leave to amend a complaint in order to cure jurisdictional defects." Pl.'s Reply (in Support of Mot. for Leave to Amend) at 3 (citing, *inter alia*, *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826, 837, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989) (dismissing non-diverse defendant to establish complete diversity rather than dismissing case and requiring plaintiff to refile case against only the diverse defendants)). Here, however, 24 Fitness seeks not merely to "cure" a jurisdictional defect (as it attempted to do when it filed the first amended complaint, dropping its parent corporation, 24 Hour Worldwide, from the caption), but to add an entirely new cause of action premised, for the first time, on federal law.

16